REQUESTED BY: Michael E. Behm, Executive Director
Nebraska Commission on Law Enforcement and Criminal Justice
 Introduction
You have requested the opinion of this office as to whether or not the Nebraska Law Enforcement Training Center ("Training Center") is obligated to provide initial training to jail personnel because such initial training is called for in the Standards for Jail Facilities issued by the Nebraska Jail Standards Board. Specifically, 81 NAC ch. 2, § 003.02 states that, as to jail facility staff in Nebraska, "[s]atisfactory completion of a minimum of eighty (80) hours of initial training provided by the Nebraska Law Enforcement Training Center is required."
In your opinion request letter you inform us that "[r]ecently, questions have arisen related to whether the Training Center has an obligation to provide the Initial Training, which is an eighty (80) hour course presented three time a year for county and city jail staff." You go on to note that "there does not appear to be a statutory obligation which requires the Training Center to provide Initial Training for jail staff." The question, thus, is whether the Jail Standards themselves, as promulgated by the Jail Standards Board, can serve to place on the Training Center the obligation to provide the training.
The Statutory Mission of the Training Center
 As a preliminary matter, we agree with your statement that "there does not appear to be a statutory obligation which requires the Training Center to provide Initial Training for jail staff." The statute which creates the Training Center, Neb. Rev. Stat. § 81-1402 (Cum. Supp. 2004), states that the purposes of the Training Center are, in essence, to test law enforcement candidates to ensure they meet pre-certification and certification requirements and provide pre-certification and certification programs and advanced law enforcement training programs. While the term "law enforcement" does not have a statutory definition, "law enforcement officers" are defined as persons who, among other things, are "authorized by law to make arrests." Neb. Rev. Stat. § 81-1401(5) (Cum. Supp. 2004). "Law enforcement agencies" are defined as police departments, town marshals, sheriffs' offices and the Nebraska State Patrol. Neb. Rev. Stat. § 81-1401(4) (Cum. Supp. 2004). Accordingly, it appears that the statutory mission of the Training Center is to do pre-certification and certification of law enforcement officers who are or will be "authorized by law to make arrests" and to provide training programs for such individuals. Since jail personnel may well not be empowered to make arrests, there appears to be no statutory requirement that the Training Center provide initial training for jail staff.
Independence of the Jail Standards Board and its Relationship to the Crime Commission, PSAC and Training Center
In order to determine whether or not § 003.02 of chapter 2 of the Standards for Jail Facilities issued by the Jail Standards Board can serve to place an obligation to provide initial training for jail staff on the Training Center, it is necessary to understand the relationship between the Board, the Nebraska Commission on Law Enforcement and Criminal Justice ("Crime Commission") and the Nebraska Police Standards Advisory Council ("PSAC"). A key question here is whether the Jail Standards Board is an entity that is autonomous in itself or whether it is really just a unit falling under the authority and control of the Crime Commission.
In Op. Att'y Gen. No. 141 (November 1, 1985), this office was asked whether, under the statutory scheme, the Crime Commission, through its Executive Director, could control the operations or decision-making authority of the Jail Standards Board. After reviewing the pertinent statutes and explaining the inter-play among them, this office, in Opinion 141, concluded:
Apart from general budgetary and administrative control by the Crime Commission, which in particular includes control over the former staff of the Jail Standards Board by the Executive Director of the Crime Commission, the Jail Standards Board itself remains an autonomous board in terms of the exercise of its discretion and decision-making authority regarding its particular statutory duties.
We have again reviewed the statutes upon which Opinion 141 was based; and, while virtually all of them have been amended in the intervening years, they have not changed in any way that would cause us to alter our opinion.
The Jail Standards Board is established by Neb. Rev. Stat. §83-4,124 (Cum. Supp. 2004) and, under Neb. Rev. Stat. § 83-4,126
(1999), is given the "authority and responsibility" to "develop minimum standards for the construction, maintenance, and operation of criminal detention facilities." While the statutes make clear that for administrative and budgetary purposes the Board falls under the Crime Commission, Neb. Rev. Stat. §§81-1423(15) (Supp. 2005) and 83-4,124 (Cum. Supp. 2004), there is nothing in the statutes to indicate that the Board is not an independent entity for purposes of developing standards for the maintenance and operation of prisons and jails. In carrying out this part of its statutory duties the Board is neither an arm of nor subservient to the Crime Commission. By the same token, the Crime Commission and the entities operating under its supervision are not controlled by or answerable to the Jail Standards Board.
The Training Center operates under the supervision and control of the PSAC, Neb. Rev. Stat. § 81-1402 (Cum. Supp. 2004). The PSAC is established by Neb. Rev. Stat. § 81-1406 (Cum. Supp. 2004), and it has broad authority in setting the curriculum of the Training Center and establishing certification and training standards for law enforcement officers, among other duties. Neb. Rev. Stat. § 81-1403 (Supp. 2005). It is important to note, however, that the PSAC performs all of its duties with regard to the Training Center "[s]ubject to review and approval by the [crime] commission." Id. Moreover, by statute, the PSAC is deemed to be a special standing committee of the Commission which "shall act for the commission in all matters relating to law enforcement training and the training center. . . ." § 81-1406 (emphasis supplied). Based on the foregoing, it appears that the PSAC is ultimately responsible to the Crime Commission in connection with the operation of the Training Center in the sense that the performance of the PSAC's duties are subject to "review and approval" by the Commission and the PSAC is considered to be a standing committee of the Commission acting on behalf of the Commission. Thus, it may be said that the Training Center is a legislatively created entity operating under the Crime Commission through the PSAC.
To summarize on this point, it can be seen that the Jail Standards Board, in developing standards for the maintenance and operation of prisons and jails, is an autonomous entity which is not under the control of the Crime Commission. The Board, however, also has no authority to control or direct the Crime Commission or entities operating under the Commission, such as the PSAC and the Training Center.
The Board's Standards as not Binding on the Crime Commission, PSAC and Training Center
 Generally speaking, unless there is clear statutory authority to do so, we do not believe that one State agency, board or commission can, through the adoption of rules and regulations, compel another State agency, board or commission to perform any duty or function that the latter does not already have under the statutes governing it. In other words, unless a statute permits it, an agency, board or commission would be exceeding its statutory authority by seeking to impose a duty or function on another, separate agency, board or commission. This concept is in line with and supported by the provision of the Administrative Procedure Act which states that, in a proper proceeding, a court "shall declare [a] rule or regulation invalid if it finds that it . . . exceeds the statutory authority of the agency. . . ." Neb. Rev. Stat. § 84-911 (1999).
As discussed previously in this opinion, there appear to be no statutes which impose upon the Crime Commission, PSAC and/or Training Center the obligation to provide initial training for jail staff. There also appears to be no statutory authority for the Jail Standards Board to impose this obligation. While the Board is to issue standards for the "staffing, training, and demeanor of [jail] personnel," Neb. Rev. Stat. § 83-4,129(1) (1999) (emphasis supplied), this statutory provision cannot be interpreted as giving the Board the power to direct that any such training be provided by the Training Center. The authority to set standards for training does not include the power to compel another State agency to provide that training. Therefore, to the extent that the Board's training standards may be interpreted as placing an obligation on the Training Center to provide initial training, they exceed the statutory authority of the Board.
 Conclusion
As discussed above, there is nothing in the statutes which would compel the Training Center to provide initial training for jail staff or which would permit the Jail Standards Board, through its standards for training, to compel the Training Center to do so. Therefore, to answer your question directly: The Training Center is not "bound to provide the [Initial] [T]raining based on the requirements of the Title 81 Standards."
Given the foregoing answer to the first question, we decline to answer the second question in your letter which asks: "If there is an obligation to provide the training, what would `provide' include?"
 Sincerely yours, JON BRUNING Attorney General
 Charles E. Lowe Assistant Attorney General
 Approved by: __________________________ Attorney General